**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10559

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ANGELA CHEW,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cr-00214-GAP-RMN-1

_____

Before NEWSOM, BRASHER, and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Angela Chew appeals her convictions for conspiracy to bribe a public official and commit wire fraud, bribery of a public official, and wire fraud. Chew worked as a loan

specialist at the United States Small Business Administration ("SBA"), where she illicitly collected fees in exchange for helping ineligible business owners fraudulently obtain Economic Injury Disaster Loans ("EIDLs") during the COVID-19 pandemic.

On appeal, Chew argues that the district court (1) abused its discretion in denying her third motion for a continuance of trial; (2) erred in denying her motion for a judgment of acquittal; and (3) plainly erred in instructing the jury that a person holding her position at the SBA was a public official.

After careful review, we affirm Chew's convictions.

## I.  BACKGROUND

### A.    The Indictment

On November 8, 2023, a federal grand jury returned an indictment alleging that Chew (1) worked for the SBA as a loan specialist; (2) was an employee of the United States government and public official under the meaning of 18 U.S.C. § 201(a)(1); and (3) used her loan specialist position to help ineligible business owners fraudulently obtain EIDLs during the COVID-19 pandemic, collecting fees in exchange.

The indictment charged Chew with one count of conspiracy to bribe a public official and commit wire fraud, in violation of 18 U.S.C. § 371 ("Count 1"); three counts of bribery of a public official, in violation of 18 U.S.C. §§ 201(b)(2)(B) ("Counts 2-4"); and seven counts of wire fraud, in violation of 18 U.S.C. § 1343 ("Counts 5-11").

## B.    Chew's Motions to Continue

At the November 13, 2023 arraignment of Chew, a magistrate judge appointed a federal public defender to represent Chew.  On November 27, private defense attorney Peter Strianse moved to appear pro hac vice to represent Chew, and the magistrate judge granted the motion.  Chew's appointed counsel then moved to withdraw, which the magistrate judge granted.

On December 13, Chew, through her counsel, orally moved for a continuance, and the magistrate judge granted her motion. The district court initially scheduled the trial for June 24, 2024, but later rescheduled it to July 29.

On May 23, 2024, Chew, again through her counsel, filed her second unopposed motion to continue her trial, which was scheduled for July 29.  She explained that her counsel had two criminal trials in Tennessee, on July 8 and 15.  Chew requested a continuance due to the large amount of discovery in her case and stated that the two preceding trials negatively impacted her counsel's ability to adequately prepare for her trial.  The motion was unopposed by the government.

The district court granted the motion, continuing Chew's trial until September 16, 2024, after finding that a continuance best served the ends of justice.  In its order, the district court stated that "[n]o further continuances will be granted absent compelling circumstances."

On August 9, 2024, Chew, through her counsel, filed a third motion for a continuance of her trial, as her counsel now had a

Tennessee state criminal trial on August 12 and a federal criminal trial on August 20. Chew argued that her case's complexity and over 46,000 pages of discovery constituted a compelling purpose that warranted a continuance request. To that end, Chew stated that she required more time to review discovery, which included allegedly manipulated loans, law enforcement reports, and data extractions from the co-conspirators' devices. The government opposed the motion.

The district court denied Chew's motion for a third continuance. It stated that Chew was already granted two continuances—the second of which was to accommodate counsel's trial schedule, and it had required Chew to show compelling circumstances for a third continuance.

The district court further stated that Chew's motion for a third continuance was "based on the same scheduling difficulties [Chew's counsel] has expressed since his initial appearance." It noted that Chew's counsel did not cite a conflict with the September 16 trial date but rather stated that his trial schedule made it difficult to prepare for Chew's trial. The district court then stated that counsel's nine months representing Chew afforded him "ample time" to review discovery, finding that Chew did not present a compelling reason for a third continuance and that the interests of justice did not warrant further delay.

## II. TRIAL EVIDENCE

The trial began on September 16, 2024.

25-10559                Opinion of the Court                5

## A.      Nora Hobbie

On the first day of trial, the government presented the following testimony from Nora Hobbie, an SBA attorney advisor.

Chew was hired in May 2020 as a loan specialist and was considered an employee of the SBA.[1]  Loan specialists, along with loan officers, were typically the first SBA employees to review an application for an EIDL during the COVID-19 pandemic. Specialists "were responsible for reviewing the application, obtaining additional information, if any was needed from the applicant, and ultimately making a recommendation for approval or decline."    In recommending approval, loan specialists represented to the loan's obligor that the approval was done after a review of the application pursuant to SBA policies and procedures.

Although a loan specialist recommended approval for loans, at least one senior person (usually a team lead) reviewed those recommendations.  This meant that the loans recommended for approval by Chew were approved and obligated by other SBA employees.  That said, the reviews of Chew's recommendations were not comprehensive.  While team leads held ultimate approval

---

[1] At trial, the government introduced Chew's official employment record at the SBA, which specifically showed that Chew was a temporary employee in the Office of Disaster Assistance.  At the time, the SBA hired "a large number of temporary employees" due to the high volume of applications for EIDLs. These temporary employees were allowed to work from home.

over the loan, they did not fully review work done by the loan specialist but, rather, looked it over for any issues.

During her tenure at the SBA, Chew worked on, *inter alia*, (1) a loan application for a business owned by Nabil Dajani, who was approved for a $150,000 loan despite being initially declined due to his credit history; (2) loan applications for two businesses owned by Joel Greenberg, who received loans of $150,000 for each business; (3) a loan application for a business owned by David Farber, who received a $150,000 loan despite his application's initial denial for ineligibility; and (4) a loan application prepared by Theresa McIntrye (Chew's sister) for a business owned by Richard Brock, who received a $150,000 loan.

## B.    Shaquille Lewis

The government then called Shaquille Lewis, Chew's supervisor at the SBA. Lewis testified to the following.

Lewis communicated to his team that they were not to act on applications from people that they knew to avoid conflicts of interest. As such, Lewis often spoke with Chew about SBA policies, which Chew had difficulty following. For example, Chew did not inform Lewis that she ran her own consulting business ("EDWBE") and that she had a financial interest in the applications on which she worked.[2]

---

[2] Chew's consulting business was called EDWBE. It stood in part for "Economically Disadvantaged Women," but trial witnesses could not recall its full name.

## C.    Alfonso Olivas

The government next presented the following testimony from Alfonso Olivas, who, during the relevant period, was a supervisory loan specialist with the SBA and served as a liaison with the SBA's fraud team.

Olivas determined that Chew (1) improperly shifted denied applications into the approval process, including the application for Dajani's business that was declined due to his low credit score; (2) worked on an application for a business owned by Greenberg that was flagged as a duplicate by manipulating its status, which eventually resulted in its approval; (3) worked on applications to which she was not assigned; and (4) helped a business owned by Farber get a loan after his application was deemed ineligible due to its status as an investment brokerage by placing a note in its file that it was not a brokerage firm and recommending the application be reactivated.

The loans Chew worked on, which were initially denied, would not have been reactivated and approved if Chew had not acted on them.

## D.    David Farber

Next, the government called David Farber, who testified to the following.

Farber initially applied for an EIDL, but his application was declined due to his business's ineligibility. Dajani (1) referred Farber to Chew; and (2) told Farber that Chew was a loan

application consultant.  Farber's business was a brokerage firm, which Chew knew.  But Chew's note in his application file falsely stated that Farber's firm was a data execution firm.  Farber received a $150,000 loan for both his brokerage firm and another business, and he paid a $2,000 fee to Chew.

### E.    Theresa McIntyre

Next, the government called Theresa McIntyre (Chew's sister), who worked on loan applications for EDWBE in June 2020 and testified to the following.

Chew taught McIntyre how to fill out the EIDL forms in a manner to make approval likely, and applicants paid Chew's firm $1,000 per application.  The fees went into an account controlled by Chew.  Chew was McIntyre's boss at EDWBE and assigned her work.

McIntyre intentionally submitted fraudulent financial information as part of these applications.  McIntyre and Chew discussed filling out applications and addressing issues that occurred during the application process.  To facilitate this process, Chew sent McIntyre screenshots of internal SBA computer pages that she accessed from her SBA-provided computer.

McIntyre was convicted in federal court of conspiracy to bribe a public official, submission of a false claim, theft of government property, and wire fraud in connection with her work at Chew's firm.

## F.      Special Agent Nevada Gump

Finally, the government presented the following testimony from Secret Service Special Agent Nevada Gump.

Agent Gump obtained text messages from Chew.  In those text messages, Chew told Dajani that she would manipulate the SBA's system to update Dajani's credit score.  Other messages revealed that Chew did the same for other applicants at Dajani's behest.

Dajani and Chew also discussed fees for her submission of various applications, which he solicited for her.  Chew provided Dajani with a P.O. box and electronic invoices for her clients to pay her.  Once, Dajani messaged Chew that McIntyre informed him there was an issue with an application, and Chew replied: "It's fixable. Just have to navigate the system."

Further text messages revealed that Chew filed an application on behalf of Greenberg using the SBA's internal website.  Chew also sent Greenberg a screenshot from the SBA's internal system of his loan application, which was non-public information she obtained while logged in as an SBA loan officer.

Greenberg and Dajani were separately convicted for their roles in the conspiracy.

## G.      Evidentiary Rulings

Once the government rested, the parties discussed documentary evidence that Chew wished to admit during her defense.  The central issue was authentication.  The district court

stated that it was "rather disappointed we're dealing with this in the middle of a jury trial. This is obviously something that should have been dealt with a long time before now."

For its part, the government stated Chew could not authenticate the documents she wished to present as exhibits merely because she had seen them before. Chew offered to withdraw the putative exhibits, but the district court elected to dismiss the jury and go through the documents. Chew was sworn in and subjected to examination as to the authenticity of the putative defense exhibits.

These unadmitted exhibits included in key part: (1) a flow chart explaining how the SBA processed loans; (2) Dajani's EIDL application assistance intake form that was submitted by Dajani to McIntyre; (3) an intake form prepared (or received prepared) by McIntyre for one of Greenberg's businesses; (4) an e-mail between Greenberg and EDWBE, a loan application assistance intake form for one of Greenberg's companies, and associated tax documents; and (5) the loan application assistance form for another company owned by Greenberg that Chew testified was prepared by Dajani and McIntyre, an e-mail between Greenberg and Chew's consulting firm regarding the same, and financial information for the company.

The district court declined to admit these exhibits because Chew did not have personal knowledge about them. While doing so, the district court observed that subpoenaing available trial

witnesses, such as McIntyre, would likely resolve the authentication issue.

## H.     Chew's Defense

On the fourth day of trial, Chew testified as follows.

For her position, Chew reviewed information in loan applications, helped borrowers with applications, and made recommendations to management. Chew did her work through a government-provided computer. Managers "reviewed every single thing [loan specialists] did," and Chew's work was thus reviewed on at least two levels.

Chew contrasted her time working at the SBA on EIDL applications with her previous work in the private mortgage business. She explained that "in the normal business of mortgage lending," potential borrowers provide "a lot of documentation" to lenders, loan officers, and loan processors. But, at the SBA, loan specialists "don't do any of that." Instead, documentation is requested on an as-needed basis and "a lot of the loans were approved . . . without any documentation."

As to the specific EIDLs at issue, Chew did research relating to one of Dajani's loans, though she did not recommend it for approval. Chew also did research for Farber's loan to determine that his business was loan-eligible and reactivated his application for consideration, according to SBA guidelines, and the loan was approved by management. Chew testified that she did not receive any financial benefits from the scheme, did not solicit bribes, did

not knowingly defraud the SBA, and followed all SBA training and protocols during her time at the agency.

During cross-examination, Chew testified that her duties did not involve evaluating applicants' credit, though the government offered evidence that the loan specialist job description included investigating and evaluating applicants' creditworthiness.

Chew testified that she (1) was not engaged in outside employment during her time with the SBA, and (2) did not get paid to consult on any applications. Chew explained that, at the time of her SBA employment, McIntyre operated EDWBE. However, "because all of the government entities were shut down" during the pandemic, Chew could not transfer legal ownership of EDWBE to McIntyre. Similarly, Chew testified that "since banks were closed during COVID, I was still the sole signer on [EDWBE's bank] account because you couldn't make those transfers during that period." Despite this, Chew insisted that McIntyre was operating the business and had "remote access" to EDWBE's bank account.

## I.    Chew's Rule 29 Motions for Acquittal

Chew made motions for judgment of acquittal on all counts (1) after the government rested and (2) again after her defense testimony. Fed. R. Crim. P. 29. As to the bribery of a public official counts, Chew argued that the government had not addressed the offense's essential element that Chew was a public official. To that end, Chew argued (1) there needed to "be some proof in the record" that she "was, in the view of the Small Business

Administration, a public official"; and (2) there was no factual predicate in the record "for a jury to . . . conclude that [the public official] element ha[d] been satisfied."

In response, the government argued that (1) § 201(a)(1) states an "employee" of the United States or an agency is a public official; (2) testimony and documentary evidence showed that Chew was employed by the SBA, an agency of the United States government; and (3) Chew therefore qualified as a public official. 18 U.S.C. § 201(a)(1).    The district court denied Chew's initial motion.

After Chew rested her defense, Chew renewed her motion for a judgment of acquittal, adopting all of the arguments she made in her initial motion.    The district court denied the renewed motion.

## J.    The Jury Instructions and Verdict

Prior to trial, Chew and the government jointly filed proposed jury instructions.  Those proposed instructions stated, *inter alia*, that (1) Chew could be found guilty of receipt of a bribe by a public official only if the government proved beyond a reasonable doubt that Chew was a public official; and (2) "[a]nyone holding the position of a loan specialist employee for the Small Business Administration, as described in the indictment, would be a public official."

At the close of trial, the district court charged the jury in relevant part using those two jointly-proposed instructions.  At trial, Chew did not object to the instructions.

The jury returned a guilty verdict on ten of the eleven counts in the indictment, finding Chew not guilty of one count of wire fraud.

### K.    Sentencing

At Chew's initial sentencing hearing, the district court declined to apply a four-level enhancement under U.S.S.G. § 2C1.1(b)(3) for an offense that involves a public official in a high-level or sensitive position, finding that Chew was not a high-level decisionmaker or employed in a sensitive governmental position.

Later, at Chew's continued sentencing hearing, the district court declined to apply a two-level enhancement under U.S.S.G. § 3B1.3 for abuse of position of trust. The district court stated that, while Chew had a position of public trust and took advantage of it, her role was ultimately clerical and lacked any official discretion that significantly aided her in facilitating the offense. The district court then noted that the enhancement's commentary referred to professional and managerial discretion, which it found that Chew lacked.

The district court sentenced Chew to a 96-month total term of imprisonment, followed by 3 years of supervised release. Chew's prison sentence consisted of: (1) 60 months for the conspiracy conviction in Count 1; and (2) concurrent 96-month terms for each of the bribery and wire fraud convictions.

Chew timely appealed.  On appeal, Chew raises three issues, which we address in turn.[3]

## III.  CHEW'S THIRD MOTION FOR A CONTINUANCE

Chew first argues that the district court abused its discretion in denying her third motion for a continuance of trial.[4]

### A.    Motions for a Continuance

"The Sixth and Fourteenth Amendments to the U.S. Constitution guarantee that any person brought to trial in any state or federal court must be afforded the right to assistance of counsel before he or she can be validly convicted and punished by imprisonment."  *United States v. Jeri*, 869 F.3d 1247, 1257 (11th Cir. 2017) (quoting *United States v. Verderame*, 51 F.3d 249, 251 (11th Cir. 1995)).  This right includes "the notion of adequate time for counsel to prepare the defense."  *Id.* (quoting *Verderame*, 51 F.3d at 252).  Thus, the denial of a motion for a continuance may "depriv[e] the defendant of an opportunity to adequately prepare his defense."  *Id.*

Whether the denial of a continuance violates a defendant's due process depends on the circumstances of the case, with

---

[3] Chew did not appeal her 96-month sentence.  At sentencing, Chew's total offense level of 34 and criminal history category of I yielded an advisory guidelines range of 151 to 188 months of imprisonment.  U.S.S.G. Ch. 5, Pt. A.

[4] We review the denial of a motion for a continuance for an abuse of discretion.  *United States v. Jeri*, 869 F.3d 1247, 1257 (11th Cir. 2017).  "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard."  *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004).

16                    Opinion of the Court                    25-10559

emphasis on the reasons given to the court.  *Id.*  When a continuance is requested so that a defendant may have more time for trial preparation, the denial "must be upheld unless the defendant can show an abuse of discretion and specific, substantial prejudice."  *Id.* (quoting *United States v. Saget*, 991 F.2d 702, 708 (11th Cir. 1993)).  To show such prejudice, a defendant "must identify relevant, non-cumulative evidence that would have been presented if his request for a continuance had been granted."  *Id.*

This Court has detailed "numerous considerations relevant to reviewing the denial of a continuance when the request was based upon a claim of inadequate preparation time."  *United States v. Garmany*, 762 F.2d 929, 936 (11th Cir. 1985).  These factors include "the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution," as well as factors relating to the counsel's effectiveness at trial, skillset, and familiarity with the defendant or case.  *Id.* (quoting *United States v. Uptain*, 531 F.2d 1281, 1286-87 (5th Cir. 1976)).

In *United States v. Valladares*, this Court upheld the denial of an unopposed motion for a continuance, despite the defendant's argument that she had only thirty-five days after arraignment to prepare for trial against complex Medicare fraud charges while the government delayed producing certain materials.  544 F.3d 1257, 1261-65 (11th Cir. 2008).  This Court concluded that the defendant failed to show specific, substantial prejudice because she did not

identify any specific, non-cumulative evidence "that would indicate a different outcome if her motions had been granted." *Id.* at 1265.

## B.    Analysis

Chew has not shown that the district court's denial of her third motion to continue trial "was an abuse of discretion which resulted in specific substantial prejudice." *Jeri*, 869 F.3d at 1257 (quoting *Verderame*, 51 F.3d at 251).

To start, the district court (1) granted Chew's two prior motions to continue her trial; (2) separately continued her trial due to a scheduling conflict; and (3) warned in its final order continuing trial that "[n]o further continuances will be granted absent compelling circumstances."

Chew's counsel represented her for approximately ten months before trial, which the district court viewed as plenty of time to review discovery. *Garmany*, 762 F.2d at 936. This was a far greater "quantum of time available for preparation" than the thirty-five days this Court found sufficient in the *Valladares* defendant's fraud case. *Id.* (quoting *Uptain*, 531 F.2d at 1286-87); *Valladares*, 544 F.3d at 1264-65. Plus, (1) Chew's counsel was an experienced criminal trial attorney, having conducted four criminal trials earlier that summer; and (2) Chew makes no claim that the government delayed in turning over discovery materials or provided such materials at the eleventh hour. *Garmany*, 762 F.2d at 936.

We also reject Chew's claim that she was prejudiced by the district court's exclusion, on authentication grounds, of the

following exhibits she offered: (1) EIDL application intake forms sent to EDWBE for Dajani and Greenberg's businesses; (2) emails between Greenberg and EDWBE; and (3) financial information for Dajani and Greenberg's businesses. Chew argues that her counsel's schedule precluded him from adequately authenticating those documents. But Chew has not specifically explained how a continuance would have aided her counsel in authenticating the documents.

More importantly, Chew has not demonstrated how those exhibits "would indicate a different outcome if her motion[] had been granted." *Valladares*, 544 F.3d at 1265. Chew contends that "admission of the excluded exhibits would have undercut McIntyre's testimony," and that McIntyre was "a key government witness." Yet, setting McIntyre's testimony completely aside would still not immunize Chew from the litany of other incriminating evidence in this straightforward fraud case, including: (1) the testimony of five other witnesses; (2) text messages sent and received by Chew; (3) a forensic analysis of Chew's activities on her government-issued computer showing flagrant violations of SBA policies; and (4) Chew's own trial testimony that she was the sole individual listed on EDWBE's bank account and business registration with the state. In view of that reality, any resulting prejudice from not admitting Chew's putative exhibits would not be substantial enough to "indicate a different outcome." *Valladares*, 544 F.3d at 1265.

At bottom, the underlying conspiracy was a simple fraud scheme that involved Chew manipulating EIDL applications prepared by her sister, with Dajani sending clients their way. Armed with a plethora of evidence, the government concurrently took multiple avenues to prove that bold scheme to the jury. On this record, neither a motion to continue nor the admittance of Chew's putative exhibits would have changed the jury's guilty verdict.

Because Chew has not shown an abuse of discretion that resulted in specific, substantial prejudice, we affirm the district court's denial of Chew's third motion to continue trial.

## IV.  CHEW'S MOTION FOR JUDGMENT OF ACQUITTAL

Chew next argues that the district court erred in denying her motion for a judgment of acquittal because the government failed to present sufficient evidence for the jury to find that she was a public official for purposes of 18 U.S.C. § 201(a)(1) when it convicted her of bribery.[5] We easily conclude otherwise.

---

[5] We review *de novo* whether the evidence was sufficient to sustain a criminal conviction. *United States v. Davis*, 854 F.3d 1276, 1292 (11th Cir. 2017). The district court's denial of "motions for a judgment of acquittal will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000). We must "view the facts and draw all reasonable inferences therefrom in the light most favorable to the government." *United States v. Hansen*, 262 F.3d 1217, 1236 (11th Cir. 2001) (quoting *United States v. Slocum*, 708 F.2d 587, 594 (11th Cir. 1983)).

## A.    Section 201—Bribery of a Public Official

Section 201 proscribes, *inter alia*, a public official from "corruptly demand[ing], seek[ing], receiv[ing], accept[ing], or agree[ing] to receive or accept anything of value" in exchange for "being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States." 18 U.S.C. § 201(b)(2)(A)-(B).

Congress intended for "public official" to be interpreted broadly. *See Dixson v. United States*, 465 U.S. 482, 491-96 (1984). To that end, § 201 states that an "*employee* . . . of the United States, or any department, *agency* or branch of Government thereof . . . in any official function, under or by authority of any such department, agency, or branch of Government" is a public official. 18 U.S.C. § 201(a)(1) (emphasis added). The SBA is a federal agency. *About SBA: Organization*, Small Bus. Admin., https://perma.cc/K9YH-VEA2 (last visited July 14, 2026).

A conviction under § 201(b)(2) "requires a showing that something of value was . . . corruptly demanded, sought, received, accepted, or agreed to be received or accepted by a public official . . . in return for 'being influenced in the performance of any official act.'" *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404 (1999) (quoting 18 U.S.C. § 201(b)(2)). And "[a]ny decision or action on any . . . matter . . . in such official's official capacity" is an official act. 18 U.S.C. § 201(a)(3).

## B.    Analysis

The district court did not err in denying Chew's motion for a judgment of acquittal because the evidence was more than sufficient to support a reasonable jury finding that Chew was a public official under the meaning of § 201 when the jury convicted her of bribery.  To wit, (1) the government clearly showed that Chew was *employed* by the SBA and worked on loan applications pursuant to her positional duties; and (2) the plain language of § 201 states that federal agency employees acting in an official function under agency authority are public officials.  *See* 18 U.S.C. § 201(a)(1), (3).

The district court's findings at Chew's sentencing do not change this analysis.  Chew argues that the district court's decision not to apply the guidelines enhancements under U.S.S.G. § 2C1.1(b)(3) and § 3B1.3 contradicts its decision to find the evidence sufficient as to the public official element of § 201.  The problem for Chew is that those two guidelines enhancements contain different standards than § 201, which requires only that Chew be a federal employee.  *Compare* U.S.S.G. §§ 2C1.1(b)(3), 3B1.3, *with* 18 U.S.C. § 201(a)(1).

Section 2C1.1 provides for a four-level increase of a defendant's offense level "[i]f the offense involved an elected public official or any public official *in a high-level decision-making or sensitive position*."  U.S.S.G. § 2C1.1(b)(3) (emphasis added).  And § 3B1.3 provides for a two-level increase of a defendant's offense level "[i]f the defendant abused a position of public or private trust, or used

a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3 (2024). "Public or private trust" is "a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." *Id*. cmt. n.1.

The district court found that (1) Chew's position was not high-level or sensitive in denying the § 2C1.1(b)(3) enhancement, and (2) her position lacked the significant professional or managerial discretion to warrant the § 3B1.3 enhancement.

In contrast, § 201 does not require that a public official hold a high-level position or exercise managerial discretion; it requires only that the individual be a federal *employee* acting in an official function. *See* 18 U.S.C. § 201(a)(1). Thus, the district court's denial of the sentencing enhancements was not inconsistent with its earlier ruling denying Chew a judgment of acquittal.

We also reject Chew's argument that the government had to show she had a sufficient level of federal responsibility in a position of public trust. To make that argument, Chew (1) ignores the plain statutory language of § 201; and (2) relies on two, inapposite cases about whether *private individuals* acting in concert with the government were "public officials." *See Dixson*, 465 U.S. at 484 (addressing whether, for purposes of § 201, "officers of a private, nonprofit corporation administering and expending federal community development block grants [were] 'public officials'"); *United States v. Kenney*, 185 F.3d 1217, 1218, 1221-22 (11th Cir. 1999)

(explaining that *Dixson*'s analysis applies to "private individuals," and analyzing the "scope of the term 'public official'" as applied to a defendant-manager at a publicly traded company that did government contract work with the U.S. Department of Defense).

Because the government presented overwhelming evidence that Chew was a federal employee who worked on loan applications pursuant to her positional duties, the jury could reasonably and easily find that Chew was a public official when it convicted her of bribery under § 201. Accordingly, we affirm the district court's denial of Chew's motion for a judgment of acquittal.

## V. JURY INSTRUCTIONS

Finally, Chew argues that the district court plainly erred in instructing the jury that a person holding her position at the SBA was a public official because, in her view, this instruction constituted a directed verdict for the government on § 201(b)(2)'s public official element.[6] However, because Chew invited any error associated with the challenged instruction, we do not address this argument.

---

[6] We review jury instructions *de novo* for legal correctness, while their phrasing is reviewed under an abuse-of-discretion standard. *United States v. Wilk*, 572 F.3d 1229, 1236-37 (11th Cir. 2009). Challenges to jury instructions not raised before the district court are reviewed for plain error. *United States v. McLellan*, 958 F.3d 1110, 1118 (11th Cir. 2020).

## A.    The Doctrine of Invited Error

"[T]he doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Maradiaga*, 987 F.3d 1315, 1322 (11th Cir. 2021) (quoting *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009)). "Where a party invites error, [we are] precluded from reviewing that error on appeal." *Id.* (quoting *United States v. Harris*, 443 F.3d 822, 823-24 (11th Cir. 2006)).

This Court reasoned in *Maradiaga* that, not only did the defendant not "object to the jury instructions at trial, he actually proposed the very instruction that he now challenges on appeal." *Id.* (footnote omitted). The Court stated that a defendant "proposing the exact language that the district court adopted" is a "textbook case of invited error" and thus declined to review Maradiaga's challenge to the jury instructions. *Id.* However, this Court has declined to apply the invited error doctrine where the parties jointly proposed a jury instruction that was correct at the time but was later rendered incorrect by a subsequent Supreme Court decision. *United States v. Duldulao*, 87 F.4th 1239, 1255-57 (11th Cir. 2023).

## B.    Analysis

Here, the invited error doctrine precludes review of Chew's challenge to the jury instruction as to the public official element of 18 U.S.C. § 201(b)(2)(B), as (1) Chew and the government jointly proposed the instruction; (2) the district court gave that proposed

25-10559                Opinion of the Court                25

instruction without modification; and (3) there was no intervening change in the law that rendered the instruction incorrect.

Notably too, the relevant jury instruction given by the district court mirrored this Court's applicable pattern instructions, which are consistent with our preceding discussion about § 201. This Court's pattern jury instruction for bribery of a public official under 18 U.S.C. § 201(b)(1) states: "Anyone holding the position of [position], as described in the indictment, is a public official." 11th Cir. Pattern Jury Inst. (Criminal Cases) O5.1 (brackets in original). The instruction for receipt of a bribe of a public official under § 201(b)(2) contains similar language. *Id.* O5.2. The district court here instructed: "Anyone holding the position of a loan specialist employee for the Small Business Administration, as described in the indictment, would be a public official."

## VI.  CONCLUSION

For the foregoing reasons, we affirm Chew's convictions.

**AFFIRMED.**